IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIRECTV, INC. | : | |
| Plaintiff | : | |
| VS. | : | 3:CV-05-0826 |
| | : | (JUDGE VANASKIE) |
| EUGENE MICHAEL WALSH JR. | : | |
| Defendant | : | |
| | : | |

## MEMORANDUM

This matter is before the Court on Plaintiff DIRECTV, Inc.'s ("DTV") Motion for Summary Judgment.  (Dkt. Entry 163.)  DTV filed a complaint against Defendant Eugene Michael Walsh Jr. alleging Mr. Walsh unlawfully intercepted DTV's encrypted satellite television signal and manufactured, assembled, or modified pirate access devices, in violation of the Federal Communications Act, 47 U.S.C. § 605(a) and § 605(e)(4); the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1)(a); and the Pennsylvania anti-piracy statute, 18 Pa. Cons. Stat. Ann. § 910(a).[1]  (Dkt. Entry 1.)  DTV is seeking statutory damages and injunctive relief, plus attorney's fees and litigation costs.

DTV's motion is unopposed.  Mr. Walsh was precluded from opposing DTV's claims as a sanction for his failure to comply with an Order issued by this Court compelling responses

---

[1]This Court has jurisdiction over the federal statutory claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the Pennsylvania law claim pursuant to 28 U.S.C. § 1367(a).

to DTV's discovery requests. Nevertheless, DTV must still demonstrate that summary judgment in its favor is appropriate. For the reasons that follow, the Court finds summary judgment is appropriate and will grant DTV's motion. The Court will award $23,000 in statutory damages, $32,584 for attorney's fees, and $21,488.90 for litigation costs, and will issue an injunction permanently enjoining Mr. Walsh from violating the anti-piracy statutes.

## I. BACKGROUND

### A. Procedural Background

On January 13, 2003, DTV filed a complaint against nine defendants, including Mr. Walsh. (Dkt. Entry 1, ¶ 23.) The complaint asserted six claims, but only four claims – to redress violations of 47 U.S.C. § 605(a), 47 U.S.C. § 605(e)(4), 18 U.S.C. § 2511(1)(a), and 18 Pa. Cons. Stat. Ann. § 910(a) – remain against Mr. Walsh. This action was docketed originally to No. 3:CV-03-0075 and assigned to the Honorable A. Richard Caputo. The matter was reassigned to the undersigned on May 12, 2004, (Dkt. Entry 67), and on April 25, 2005, the claims against Mr. Walsh were severed from the original action and assigned to the present docket, No. 3:CV-05-0826. (Order of Court, Dkt. Entry 123.)

After the complaint and summons were finally served upon Mr. Walsh – which, due to his defiance, required three attempts and an evidentiary hearing to establish his identity – the parties engaged in discovery. DTV served Mr. Walsh with interrogatories, requests for production of documents, and requests for admissions. Mr. Walsh failed to respond, nor did he

make initial disclosures required by Fed. R. Civ. P. 26. DTV filed a motion to deem admitted its requests for admissions and to compel Mr. Walsh's initial disclosures and responses to discovery. (Dkt. Entry 115.) The Court granted the motion; the requests for admissions were deemed admitted, and Mr. Walsh was afforded ten days to make his initial disclosures and respond to DTV's discovery requests. (Order of Court, June 7, 2005, Dkt. Entry 125.) Mr. Walsh failed to comply with this Order, which prompted DTV to file a motion for sanctions. (Dkt. Entry 126.) The Court granted DTV's motion and "prohibited [Mr. Walsh] from opposing Plaintiff's claims and . . . prohibited [him] from introducing any evidence in support of his defenses." (Order of Court, August 10, 2005, Dkt. Entry 131, at 2.)

On June 25, 2007, DTV filed a Motion for Summary Judgment, (Dkt. Entry 163), a statement of material facts, (Dkt. Entry 163-3), and a brief in support of its motion. (Dkt. Entry 164.) The following day, DTV filed supporting exhibits. (Dkt. Entry 165.) Because of the sanction order, the motion is unopposed and, therefore, ripe for disposition.

**B. Factual Background**

DTV distributes satellite television programming to residential and business customers across the country. (Whalen Decl., Ex. 1 to Pl.'s Br. Supp. Mot. Summ. J. ("Pl.'s Br. Supp."), Dkt. Entry 165-2 ¶¶ 4-5.) DTV offers the programming only on a subscription and pay-per-view basis, and it encrypts, or digitally scrambles, its satellite broadcast to guard against unauthorized viewing. (Id. ¶ 5.) A typical system consists of a satellite dish, a receiver (or

"integrated receiver/decoder"), and an access card. (Id.) The access card, when inserted into the receiver, allows the receiver to decrypt the programming the subscriber has purchased. (Id. ¶ 6.) In recent years, devices have been developed to circumvent the necessity of a valid access card, allowing "pirates," or users of such devices, the ability to decrypt and receive programming without authorization or charge.

Mr. Walsh was a DTV subscriber from March 10, 2000, through April 19, 2001. (Pl.'s Statement of Material Facts ("SMF"), Dkt. Entry 163-3, ¶ 3.) His service was disconnected after he reported to DTV that his satellite equipment was stolen from his commercial vehicle. (Id. ¶ 4.) Although the alleged theft occurred on March 16, 2001, Mr. Walsh waited until April 19, 2001, to contact DTV. (Id.) He declined a subsequent invitation from a DTV representative to reactivate his subscription. (Id. ¶ 5.) Despite the absence of an open account, however, Mr. Walsh viewed DTV's satellite programming at his residence from April, 2001, through at least February 16, 2005. (Id. ¶ 6.) As demonstrated by the record, Mr. Walsh's viewing was unauthorized and facilitated by his use of pirate access devices.

DTV first became aware of Mr. Walsh after it executed writs of seizure at a mail shipping facility used by distributors of pirate access devices. (Whelan Decl. ¶ 29.) DTV obtained records that revealed Mr. Walsh purchased pirate access devices from Vector Technologies ("Vector") and Canadian Security and Technology ("CanSat"), both of which market their devices for the unlawful interception of DTV's satellite signal. (Id. ¶¶ 30-31.)

According to the records, on April 3, 2001, Mr. Walsh ordered a "Vector Super Unlooper w/ X Code." (SMF ¶ 7.) On April 25, 2001, he ordered from CanSat an "MK1 Programmer." (Id. ¶ 8.) These devices are marketed as allowing the unauthorized reception of DTV's programming.[2] (Id. ¶ 11.)

In addition to the two devices purchased from Vector and CanSat, DTV's investigation uncovered evidence that Mr. Walsh purchased three additional pirate access devices and possessed eight other pirate access devices. Mr. Walsh maintained an account with PayPal, Inc., an online payment services company that allows its account holders to send or receive money electronically. (Id. ¶ 18.) DTV subpoenaed Mr. Walsh's account records, which indicate he purchased three alleged pirate access devices from a company called Protronics: (1) a "Boot Reader Circuit Board," on or about July 17, 2001; (2) a "Repair Station/Loader Circuit Board," on or about October 21, 2001; and (3) a "Board Order," on or about July 14, 2002. (SMF ¶ 19.) There is no evidence, however, that Mr. Walsh actually received and possessed these devices or used them to intercept DTV's satellite programming.

---

[2]An unlooper is designed to repair illegally modified DTV access cards that have been disabled, or "looped," by DTV's electronic countermeasures. (Whelan Decl. ¶¶ 34-36.) A programmer is designed to program DTV access cards in order to obtain satellite programming without charge. (Id. ¶ 38.) For instance, a programmer is used to "clone" a valid access card by enabling an inactive or unauthorized access card to receive the same programming as the cloned access card. (Id.) A programmer is also used to allow a valid access card to receive all satellite programming without charge. (Id.) DTV is unaware of a legitimate business use for an unlooper or programmer.

Regarding Mr. Walsh's alleged possession of eight pirate access devices, DTV relies on Mr. Walsh's messages that he posted on Websites and forums. Mr. Walsh was a member of several Internet forums, chat rooms, and bulletin boards where satellite piracy enthusiasts meet to share information to assist one another in the surreptitious interception of DTV's programming. (Id. ¶ 20.) He posted on these sites a substantial number of messages under the username, "Busmike," which were captured by a computer forensics expert. (Id. ¶ 21; see also Walker Decl., Ex. 4 to Pl.'s Br. Supp., Dkt. Entry 165-5, ¶ 10.)[3] DTV identifies several messages, all posted between February and November, 2001, that purport to reveal that Mr. Walsh possessed the following devices: an emulator[4]; a bootstrap board; a turbo unlooper; three programmers; a Linux emulator; and a Timeshift bootloader (also known as a programmer). (SMF ¶ 22.) Except for the messages related to the bootstrap board and Linux emulator – in which the contents of those postings clearly indicate that Mr. Walsh was not

---

[3] Lacey Walker Jr., a certified computer forensic specialist, analyzed data derived from numerous web servers that contained satellite piracy content. (Walker Decl. ¶ 2.) Mr. Walker searched this data for evidence of Mr. Walsh's email addresses: "Busmike@msn.com"; "Busmike@adelphia.net"; and "Busmike@ptd.net." (Id. ¶¶ 9-10.) Mr. Walsh admitted that he used these email addresses. (SMF ¶¶ 14-16.) The searches revealed that an individual using the foregoing email addresses and the username, "Busmike," was a registered member of several Internet forums and message boards devoted to the satellite piracy. (See Walker Decl. ¶¶ 11-23.)

[4] An emulator is a device that "mimic[s] the functions of an access card in order to circumvent the [DTV] conditional access system and thus receive all or most of [DTV]'s programming without paying for it." (Expert Report of Michael Barr, Ex. 11 to Pl.'s Br. Supp., Dkt. Entry 165-14, at 12.)

referring to his own devices, (see Ex. C to Walker Decl., Dkt. Entry 165-5, at Bates 000054; id. at Bates 000091) – these messages do demonstrate Mr. Walsh's possession of six additional pirate access devices.

Finally, DTV submitted evidence that Mr. Walsh assisted others in the interception of satellite programming by setting up piracy systems in their homes. (SMF ¶ 26.) Mr. Walsh also used his equipment to fix, clean, and unloop DTV access cards. (Id. ¶ 28.) Finally, Mr. Walsh assembled a pirate access device called a 2313 programmer. (Id. ¶ 24.)

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. Cont'l Ins. Co. v. Bodie, 682 F.2d 436, 438 (3d Cir. 1982). The moving

party has the burden of showing the absence of a genuine issue of material fact. Anderson, 477 U.S. at 256.

That DTV's motion is unopposed does not automatically entitle it to summary judgment. On the contrary, the Court may grant DTV's motion only if DTV establishes that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(e)(2); Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990); Cambridge Mgmt. Group, LLC v. Robert A. Kosseff & Assocs., P.C., Civ. A. No. 05-3402 (JAP), 2007 WL 2084895, at *1 (D.N.J. July 18, 2007).

**B. DTV's Satellite Piracy Claims**

    **1) Liability**

        **a) 47 U.S.C. § 605(a), 18 U.S.C. § 2511(1)(a), and 18 Pa. Cons. Stat. Ann. § 910(a)**

DTV contends Mr. Walsh violated the Federal Communications Act, 47 U.S.C. § 605(a), the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1)(a), and the Pennsylvania anti-piracy statute, 18 Pa. Cons. Stat. Ann. § 910(a). In pertinent part, Section 605(a) of Title 47, United States Code, provides:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate . . . communication by radio or use such communication . . . for his own benefit or for the benefit of another not entitled thereto.

Any person "aggrieved" by a violation of § 605(a) may bring a civil action for injunctive and monetary relief. 47 U.S.C. § 605(e)(3). Recently, the Court of Appeals for the Third Circuit confirmed that section 605 of the Federal Communications Act provides a private right of action in the context of piracy of DTV satellite transmissions. DIRECTV, Inc. v. Seijas, 508 F.3d 123, 124 (3d Cir. 2007).

Section 2511(1)(a) of Title 18, United States Code, makes it unlawful for any person to intentionally intercept or endeavor to intercept any electronic communication. "[A]ny person whose . . . electronic communication is intercepted . . . in violation of [§ 2511(1)(a)] may in a civil action recover from the person" who unlawfully intercepted the electronic communication. 18 U.S.C. § 2520(a). A private right of action under 18 U.S.C. § 2520 exists for violations of 18 U.S.C. § 2511(1)(a). See DIRECTV, Inc. v. Pepe, 431 F.3d 162, 167-70 (3d Cir. 2005).

Pennsylvania has comparable statutory provisions that make it unlawful for a person to possess or use "an unlawful telecommunication device," or to modify "a telecommunication device . . . for commission of a theft of telecommunication service or to . . . decrypt [or] acquire or facilitate the . . . decryption or acquisition of any telecommunication service without the consent of the telecommunication service provider." 18 Pa. Cons. Stat. Ann. § 910(a)(1)(i). In addition to criminal penalties, Pennsylvania law authorizes an aggrieved person to bring a civil action for damages and injunctive relief. Id. § 910(d). Telecommunication service is defined to encompass the type of satellite signals at issue here. See id. §910(e). The term "unlawful

telecommunication device" is defined to include "any telecommunication device which is capable of or has been altered, designed, modified, programmed or reprogrammed, alone or in conjunction with another telecommunication device or devices so as to be capable of facilitating the . . . acquisition, receipt, transmission or decryption of a telecommunication service without the consent or knowledge of the telecommunication service provider." Id.  The definition specifically encompasses "any device . . . equipment, computer software or component or part thereof, primarily . . . designed . . . or used for the purpose of providing unauthorized . . . decryption of, access to or acquisition of any telecommunication service provided by any . . . satellite . . . distribution system or facility." Id. § 910(e).  The Vector Super Unlooper w/ X Code, the MK1 Programmer, the emulator, the turbo unlooper, the three programmers, and the Timeshift bootloader clearly fall within this definition.

     The federal and state statutory provisions cited above have been recognized to encompass the alleged use of the kind of devices at issue here. See, e.g., DIRECTV, Inc. v. Kitzmiller, No. Civ. A. 03-3296, 2004 WL 692230, at *2, 5(E.D. Pa. Mar. 31, 2004); DirecTV, Inc. .v Frick, No. Civ. A. 03-6045, 2004 WL 438663, at *1, 3 (E.D. Pa. Mar. 2, 2004).  Although Pennsylvania law allows recovery for the mere possession of an "unlawful telecommunication device," federal law does not provide a civil action for "merely possessing or purchasing a pirate access device." DIRECTV, Inc. v. Robson, 420 F.3d 532, 538 (5th Cir. 2005).  Instead, "[t]o prevail on its claims for violations of § 605(a) and § 2511(1)(a), DTV must demonstrate that

[Mr. Walsh] intercepted or otherwise unlawfully appropriated DTV's transmission." Id. at 537.

Here, DTV has established Mr. Walsh violated § 605(a) and § 2511(1)(a).  Mr. Walsh is deemed to have admitted that he purchased the Vector Super Unlooper w/ X Code and the MK1 Programmer and used these devices to intercept DTV's satellite programming for unauthorized viewing at his home. He also is deemed to have admitted watching DTV's programming from his residence through at least February 16, 2005, notwithstanding his DTV subscription was disconnected on April 19, 2001.  Consequently, DTV is entitled to summary judgment on its claims arising under 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(a).

DTV has also established Mr. Walsh violated 18 Pa. Cons. Stat. Ann. § 910(a)(1)(i).  In addition to the foregoing, DTV introduced evidence of Mr. Walsh's Internet postings where he acknowledged possessing an emulator, a turbo unlooper, three additional programmers, and the Timeshift bootloader.  Because use <u>or</u> possession of such unlawful telecommunication devices violates 18 Pa. Cons. Stat. Ann. § 910(a)(1)(i), DTV is entitled to summary judgment as to this claim.[5]

---

[5]Although Mr. Walsh's PayPal transaction records reflect his purchase of three pirate access devices from Protronics that were to be shipped to his residence, DTV has adduced no evidence that these devices were actually delivered to and possessed by Mr. Walsh.  Section 910(a)(1)(i) proscribes the possession, not merely the purchase, of an unlawful telecommunications device.  Viewing the evidence in the light most favorable to Mr. Walsh, the Court cannot determine that Mr. Walsh possessed these devices.

### b) 47 U.S.C. § 605(e)(4)

DTV asserts that Mr. Walsh violated another provision of the Federal Communications Act, 47 U.S.C. § 605(e)(4). That provision makes it unlawful for a person to "manufacture[], assemble[], [or] modif[y] . . . any . . . device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of . . . direct-to-home satellite services, or is intended for any other activity prohibited by [§ 605(a)]."

In this matter, Mr. Walsh is deemed to have admitted that he built a "2313 Programmer" that was to be used for unauthorized viewing of DTV's satellite programming. There is also uncontroverted evidence that Mr. Walsh modified DTV access cards in order to receive satellite programming. See DirecTV, Inc. v. Schulien, 401 F. Supp. 2d 906, 914 (N.D. Ill. 2005) (§ 605(e)(4) violated where the defendant modified access cards for the purpose of decrypting satellite signal). Consequently, DTV is entitled to summary judgment on this claim.

### 2) Relief

#### a) Damages under 47 U.S.C. § 605(e)(3)(C)(i)

A party aggrieved by violations of 47 U.S.C. § 605(a) and § 605(e)(4) may recover actual damages or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). DTV has elected to recover statutory damages. (Pl.'s Br. Supp. Mot. Summ. J. ("Pl.'s Br. Supp."), Dkt. Entry 164, at 35.) For each violation of § 605(a), an aggrieved party may recover "a sum of not less than $1,000 or more than $10,000, as the court consider just." 47 U.S.C. § 605(e)(3)(C)(i)(II).

DTV contends that it "is entitled to no less than $13,000 in statutory damages for the purchase and possession of at least thirteen (13) pirate access devices." (Pl.'s Br. Supp. 35.) Stated otherwise, DTV equates the purchase or possession of a pirate access device with a violation of § 605(a).  Therefore, according to DTV, because Mr. Walsh purchased or possessed thirteen pirate access devices, he committed thirteen violations of § 605(a).

As stated above, § 605(a) does not make unlawful the mere purchase or possession of pirate access devices, but instead prohibits the interception or receipt of satellite programming without authorization.  In this matter, Mr. Walsh admitted that he viewed DTV's satellite programming at his residence from April, 2001, through February 16, 2005, even though his DTV subscription had been disconnected.  He also admitted that he used the Vector Super Unlooper w/ X Code and the MK1 Programmer to receive DTV satellite programming without authorization.  It is unclear, however, whether each device individually could intercept satellite programming or whether both devices operated in conjunction with each other to receive satellite programming.  "At a bare minimum, [Mr. Walsh] possessed the equipment necessary to perform one unlawful act of interception," and he is deemed to have admitted successfully using these devices.  DIRECTV, Inc. v. Pahnke, 405 F. Supp. 2d 1182, 1190 (E.D. Cal. 2005). Moreover, DTV has offered no evidence regarding the number of successful interceptions, nor has it adduced evidence that the other pirate access devices possessed by Mr. Walsh were utilized successfully to receive satellite programming.  On this record, therefore, DTV has

conclusively established one violation of § 605(a).

For a single violation of § 605(a), DTV is entitled to damages of not less than $1,000 or more than $10,000, "as the court considers just." "The specific amount of statutory damages assessed pursuant to § 605 rests within the sound discretion of the court." DirecTV v. Haskell, 344 F. Supp. 2d 761, 763-64 (D. Me. 2004). Although various factors inform the Court's determination of a "just" amount of damages, DTV has the burden to show that an award of damages greater than the statutory minimum is warranted. DIRECTV, Inc. v. Huynh, 318 F. Supp. 2d 1122, 1131-32 (M.D. Ala. 2004). In this regard, DTV advances no argument for an award in excess of $1,000. Consequently, DTV will be awarded $1,000 for Mr. Walsh's violation of § 605(a).

Mr. Walsh also violated § 605(e)(4). For each violation of § 605(e)(4), an aggrieved party is entitled to an amount "not less than $10,000, or more than $100,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). DTV argues for a minimum award of $130,000, based on Mr. Walsh's "thirteen violations" of § 605(e)(4). (Pl.'s Br. Supp. 36.) DTV did establish two violations of § 605(e)(4): Mr. Walsh is deemed to have admitted that he built, or assembled, a 2313 programmer, and that he unlooped, or modified, DTV access cards. Accordingly, DTV will be awarded $10,000 per violation, for a total of $20,000.

### b) Damages under 18 U.S.C. § 2520(c)(2)

Where a violation of 18 U.S.C. § 2511(1)(a) has been established, "the court may

14

assess as damages" the greater of plaintiff's actual damages and any profits made by the violator, or statutory damages of the greater of "$100 a day for each day of violation or $10,000." 18 U.S.C. § 2520(c)(2). Whether to award damages under § 2520(c)(2) is committed to the sound discretion of the Court. See DIRECTV, Inc. v. Brown, 371 F.3d 814, 818 (11th Cir. 2004); Dorris v. Absher, 179 F.3d 420, 429 (6th Cir. 1999); Reynolds v. Spears, 93 F.3d 428, 435 (8th Cir. 1996); DIRECTV, Inc. v. Neznak, 371 F. Supp. 2d 130, 134 (D. Conn. 2005).

DTV requests an award of statutory damages, as it has presented no evidence of its actual damages, or any profits made by Mr. Walsh. DTV contends that Mr. Walsh violated § 2511(1)(a) for at least 631 days and requests $63,100. The evidence supporting this contention is plainly inadequate, however, as DTV merely submits Mr. Walsh's Internet postings, one from April 1, 2001, the other from April 21, 2003, and then argues Mr. Walsh unlawfully intercepted its programming each day in between. (See Pl.'s Supp. Br. 36 (citing Ex. A to Walker Decl., Dkt. Entry 165-5, at Bates 000005; Ex. B to Walker Decl., Dkt. Entry 165-5, at Bates 000029-000030.) Without actual evidence of duration of the unlawful conduct, per diem damages are speculative and unwarranted.

The question then is whether to award no damages or $10,000. Under the circumstances, the Court will award no damages. DTV offers no persuasive justification for an award of damages under § 2520(c)(2), nor has it adduced any evidence relevant to the various

15

factors considered by courts when weighing an award of damages. See generally Huynh, 318 F. Supp. 2d at 1132. For instance, there is no evidence that Mr. Walsh significantly profited from his violation or, beyond a generalized admission, that he assisted others in their violations. Furthermore, DTV has not attempted to quantify how it was harmed financially by Mr. Walsh's activities. On the other hand, the Court believes that an award of damages would be excessive because DTV's claims under § 605(a) and § 2511(1)(a) are predicated on the same conduct, and DTV was awarded damages for the violation of § 605(a). In this regard, the $1,000 awarded to DTV "appropriately punishes [Mr. Walsh] for his illegal actions, adequately compensates [DTV] for any damage it suffered, and sufficiently deters others from engaging in similar unlawful conduct." DirecTV, Inc. v. Perrier, No. 03-CV-400S, 2004 WL 941641, at *4 (W.D.N.Y. Mar. 15, 2004). Moreover, DTV will be awarded its attorney's fees and costs to compensate it for pursuing the litigation in question. Therefore, the Court will exercise its discretion and deny damages under § 2520(c)(2).

### c) Damages under 18 Pa. Cons. Stat. Ann. § 910(d.1)

A party aggrieved by a violation of 18 Pa. Cons. Stat. Ann. § 910(a)(1)(i) is entitled to actual damages or statutory damages. See 18 Pa. Cons. Stat. Ann. § 910(d.1). Where the party elects statutory damages, the Pennsylvania anti-piracy statute provides for an award between $250 to $10,000 for each unlawful telecommunication device possessed or used by the defendant. 18 Pa. Cons. Stat. Ann. § 910(d.1)(2)-(3). DTV has elected the minimum

statutory amount for each violation.  (Pl.'s Supp. Br. 36.)

Although DTV seeks compensation for thirteen pirate access devices, DTV established possession of only eight such devices.  For eight violations of 18 Pa. Cons. Stat. Ann. § 910(a)(1)(i), DTV will be awarded $2,000.

### d) Injunctive Relief

In addition to damages, DTV seeks an injunction enjoining Mr. Walsh from violating the federal and state anti-piracy statutes.  The Court is authorized to grant injunctions to prevent violations of these statutes.  See 47 U.S.C. § 605(e)(3)(B)(i); 18 U.S.C. 2520(b)(1); 18 Pa. Cons. Stat. Ann. § 910(d)(2)(i).  Therefore, Mr. Walsh will be permanently enjoined from violating the federal and state anti-piracy statutes.

### C. DTV's Request for Attorney's Fees and Costs

As the prevailing party, DTV requests an award of attorney's fees and costs.  Specifically, DTV seeks $32,584 in attorney's fees and $21,488.90 in litigation costs.[6]  Mr. Walsh has filed no opposition to DTV's request.[7]

---

[6]The Court reviewed the Declaration of Peter V. Marcoline Jr., Esquire and the billing invoices submitted by DTV and discovered a few computational errors.  (See Exs. 9 & 10 to Pl.'s Br. Supp. Mot. Summ. J., Dkt. Entries 165-11 & 165-12.)  The Court corrected those errors, and the amount of attorney's fees and costs set forth above reflects those changes.

[7]DTV's Motion for Summary Judgment included a request for attorney's fees and costs. (Dkt. Entry 163, ¶ 26; see also Pl.'s Br. Supp. 37-39.)  Mr. Walsh never filed a response within the time prescribed by the local rules, which prompted this Court to issue an Order directing him to respond to the motion and warning that the failure to comply with the Order will result in the motion being deemed unopposed.  (Dkt. Entry 167.)  Although he was precluded from

Where, as here, a plaintiff prevails on a claim under 47 U.S.C. § 605(a) or § 605(e)(4), the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."  47 U..S.C. § 605(e)(3)(B)(iii) (emphasis added).  The "lodestar" method is utilized to determine a reasonable fee under 47 U.S.C. § 605(e)(3)(B)(iii). See DIRECTV, Inc. v. Walsh, No. 3:03-CV-072, 2006 WL 3308668, at *2 (M.D. Pa. Oct. 12, 2006).  In this regard, a reasonable fee is "the product of the hours reasonably expended and the applicable hourly rate for the legal services."  Pub. Interest Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1185 (3d Cir. 1995) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  After this product, known as the "lodestar," is determined, the Court has discretion to adjust the fee for a variety of reasons, most notably "the 'results obtained' by the plaintiff."  Id. (citing Hensley, 461 U.S. at 434).

The Court need not undertake this analysis, however, because Mr. Walsh raised no objection to DTV's fee request.  In this regard, where the opposing party fails to object to a fee request, the Court is prohibited from reducing, sua sponte, the fee award requested by the prevailing party.  As explained by our Court of Appeals:

> In statutory fee cases, it is well settled in this circuit that in calculating the "lodestar," or initial fee calculation requiring the court to multiply a reasonable hourly fee by the reasonable amount of hours worked, the district court may

---

opposing DTV's claims, nothing in the sanction order prevented Mr. Walsh from opposing DTV's request for attorney's fees and costs.  Mr. Walsh failed to comply with this Order.  Consequently, DTV's request for attorney's fees and costs is deemed unopposed.

> not award less in fees than requested unless the opposing party makes specific objections to the fee request.

United States v. Eleven Vehicles, Their Equipment and Accessories, 200 F.3d 203, 211 (3d Cir. 2000); see also Bell v. United Princeton Props., Inc., 884 F.2d 713, 719 (3d Cir. 1989); Cunningham v. City of McKeesport, 753 F.2d 262, 266-67 (3d Cir. 1985), vacated on other grounds, 478 U.S. 1015 (1986), and reinstated, 807 F.2d 49 (3d Cir. 1986); Haslam v. Phila. Hous. Auth., Civ. A. No. 92-0075, 1992 WL 210266, at *3-4 (E.D. Pa. Aug. 21, 1992). Under the circumstances, the Court will grant DTV's request for attorney's fees of $32,584.

DTV has also sought an award of litigation costs pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), in which a court "shall direct the recovery of full costs . . . to an aggrieved party who prevails." DTV is seeking $21,488.90 in costs. The plain wording of the statute allows DTV to recover its full costs. Therefore, DTV shall be paid litigation costs of $21,488.90.

## III. CONCLUSION

For the reasons stated, DTV's Motion for Summary Judgment will be granted. Judgment shall be entered in favor of DTV in the amount of $23,000. Additionally, Mr. Walsh will be permanently enjoined from violating the anti-piracy statutes, and DTV will be awarded $32,584 in attorney's fees and $21,488.90 in litigation costs. An appropriate Order follows.

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DIRECTV, INC.** | : | |
|     **Plaintiff** | : | |
|     VS. | : | **3:CV-05-0826** |
| | : | **(JUDGE VANASKIE)** |
| **EUGENE MICHAEL WALSH JR.** | : | |
|     **Defendant** | : | |
| | : | |

## ORDER

**NOW, THIS 13th DAY OF FEBRUARY, 2008,** for the reasons set forth in foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment (Dkt. Entry 163) is **GRANTED**. Plaintiff is awarded statutory damages totaling $23,000.

2. Defendant Eugene Michael Walsh Jr. is permanently enjoined from violating 47 U.S.C. § 605(a), 47 U.S.C. § 605(e)(4), 18 U.S.C. § 2511(1)(a), and 18 Pa. Cons. Stat. Ann. § 910(a)(1)(i).

3. Plaintiff is awarded $32,584 for attorney's fees and $21,488.90 for costs.

4. The Clerk of Court shall enter judgment accordingly, and mark this action **CLOSED**.

                                                    **s/ Thomas I. Vanaskie**
                                                    Thomas I. Vanaskie
                                                    United States District Judge